**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| JOSE MADRIZ,<br><br>               Plaintiff,<br><br>     v.<br><br>KENNETH D. VILLALOBOS, *et al.*,<br><br>               Defendants. | Case No.: EDCV 20-00202-CJC(KKx)<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT [Dkt. 19]** |

**I. INTRODUCTION & BACKGROUND**

On January 30, 2020, Plaintiff Jose Madriz filed this lawsuit against Kenneth D. Villalobos and Does 1-10 asserting violations of the Americans with Disabilities Act ("ADA") and the Unruh Civil Rights Act ("Unruh Act").  (Dkt. 1 [Complaint, hereinafter "Compl."].)  Plaintiff, who cannot walk and uses a wheelchair for mobility, alleges that in December 2019, he visited Tony's Mexican Food, a restaurant owned by Mr. Villalobos.

(*Id*. ¶¶ 1–3.)  Plaintiff allegedly went to the restaurant with "the intention to avail himself of its goods or services," but encountered several architectural features that did not comply with ADA accessibility standards.  (*Id.* ¶¶ 8–25.)  Specifically, Plaintiff alleges that the dining surfaces did not contain adequate toe clearance, that the sales counters were too high, and the path of travel to the restroom was too narrow.  (Dkt. 19-1 [Application for Default Judgment, hereinafter "App."] at 1.)  He further alleges that Defendant's failure to provide ADA-compliant dining surfaces, sales counters, and paths of travel denied Plaintiff full and equal access to the store, in violation of the ADA, 42 U.S.C. §§ 1201 *et seq.*, and the Unruh Act, Cal. Civ. Code §§ 51–53.  On February 14, 2020, the Court declined to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim.  (Dkt. 10.)[1]

After Defendant failed to appear in this action and the clerk entered default against him, Plaintiff filed the instant application for default judgment.  For the following reasons, the application is **GRANTED IN SUBSTANTIAL PART**.[2]

## II.  ANALYSIS

### A.  Jurisdiction and Service of Process

In considering whether to enter default judgment against a defendant, a court must first determine whether it has jurisdiction over the subject matter and the parties.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Courts must also determine whether there was

---

[1] Though Plaintiff's application for default judgment was filed months after the Court declined to exercise supplemental jurisdiction over the Unruh Act claim, pages of the application are dedicated to discussing this claim.  The Court is disappointed by Plaintiff's counsel's disregard for the Court's prior ruling.  The application is **DENIED** to the extent it is premised on the Unruh Act claim.

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for July 13, 2020, at 1:30 p.m. is hereby vacated and off calendar.

sufficient service of process on the party against whom default judgment is requested. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992).

The Court has federal question jurisdiction over Plaintiff's ADA claim. *See* 42 U.S.C. §§ 1201. It has personal jurisdiction over Defendant because he owns Tony's Mexican Food, a restaurant located in this District. (Compl. ¶ 3.) There has also been adequate service of process pursuant to Federal Rule of Civil Procedure 4(e)(2)(A), as Defendant was personally served with the summons and Complaint on February 24, 2020. (Dkt. 11 [Proof of Service]).

### B.    Procedural Requirements for Default Judgment

Rule 55(b)(2) of the Federal Rules of Civil Procedure and this Court's Local Rule 55-1 require that applications for default judgment set forth the following information: "(1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA Mc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

Here, the procedural requirements for default judgment have been satisfied: (1) the clerk entered default against Defendant on March 25, 2020, (Dkt. 14); (2) default was entered as to the Complaint, (*id*.); (3) Defendant is not an infant or an incompetent person, (App. at 3); and (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply, (*id*.). The fifth requirement also does not apply because Defendant has not yet appeared in this action. Fed. R. Civ. P. 55(b)(2).

## C.      Merits of the Motion for Default Judgment

After entry of default, a court may grant a default judgment on the merits of the case.  Fed. R. Civ. P. 55(a)–(b).  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court may consider the following factors articulated in *Eitel v. McCool*, 782 F.2d 1470, (9th Cir. 1986), in exercising such discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.  Because default has been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  Here, the *Eitel* factors weigh in favor of a default judgment.

### 1.  Possibility of Prejudice to the Plaintiff

The first *Eitel* factor requires the Court to consider the harm to the plaintiff if the Court does not grant default judgment.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  This factor weighs in Plaintiff's favor because, without a default judgment, he would lack any other recourse for recovery since Defendant has failed to appear or to defend this suit.  *See Seiko Epson Corp. v. Prinko Image Co. (USA)*, 2018 WL 6264988, at *2 (C.D. Cal. Aug. 22, 2018) ("Given Defendant's unwillingness to answer and defend, denying default judgment would render Plaintiffs without recourse.").

**2. & 3.  The Merits of the Claim and the Sufficiency of the Complaint**

The second and third *Eitel* factors, taken together, "require that a plaintiff state a claim on which the [plaintiff] may recover."  *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).  The Court finds that the Complaint adequately states a claim for violation of the ADA.

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities . . . or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation."  42 U.S.C. § 12182(a).  Discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily available."  *Id.* § 12182(b)(2)(A)(iv).  To prevail on a discrimination claim, "the plaintiff must show that (1) [he] is disabled within the meaning of the ADA; (2) [Defendant is] a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his] disability."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

The Complaint alleges that Plaintiff cannot walk and uses a wheelchair for mobility.  (Compl. ¶ 1.)  This sufficiently sets forth a disability, which includes "a physical or mental impairment that substantially limits one or more major life activities of such individual."  42 U.S.C. § 12102.  The Complaint also alleges that Defendant owns and operates Tony's Mexican Food, a restaurant that is open to the public.  (Compl. ¶¶ 2–3, 9.)  This adequately establishes that Defendant owns or operates a place of public accommodation.  42 U.S.C. § 12181(7)(E).  Finally, Plaintiff alleges that upon visiting the restaurant, he was discriminated against because the sales counters, tables, and paths of travel did not comply with ADA requirements.  (Compl. ¶ 8.)  Specifically, Plaintiff

alleges that the sales counters were too high, the tables did not have sufficient toe clearance for wheelchair users, and the pathway to the restroom was too narrow.  (App. at 1.)  These allegations are sufficient to establish that Plaintiff was denied public accommodation because of his disability.  *See* 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(iv).  Accordingly, the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 4.  The Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of [Defendant's] conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.  "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct."  *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).  Here, Plaintiff seeks $4,000 in statutory damages under the Unruh Act and $6,234 in attorneys' fees and costs.  The Court declined to exercise supplemental jurisdiction over the Unruh Act claim, so the only remaining monetary award sought is the $6,234 request for attorneys' fees and costs.  This request is relatively low for a default judgment in an ADA case.  *See Vogel*, 992 F. Supp. 2d at 1012 (C.D. Cal. 2014) (explaining that an award of $13,739.20 was reasonable because it was a low amount and was comparable to awards in other cases granting default judgment for violations of the ADA and the Unruh Act).  The low sum of money at stake, when viewed in light of the alleged ADA violations, weighs in favor of default.

//
//
//
//

### 5. & 6.  The Possibility of a Dispute Concerning Material Facts and Whether the Default was Due to Excusable Neglect

The fifth and sixth *Eitel* factors require the Court to determine whether it is likely that there would be a dispute as to material facts and whether Defendant's failure to litigate is due to excusable neglect.  Where a plaintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is low. *See Landstar Ranger, Inc. v. Parth Entm't, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).  There is also no indication that Defendant's default was due to excusable neglect, because it failed to appear altogether despite being served with the Complaint.  *See Adobe Sys. Inc. v. Kern*, 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009) ("Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect.").  Given that Plaintiff's factual allegations are taken as true, and that Defendant has failed to oppose Plaintiffs' motion, the Court is not aware of any factual disputes that would preclude the entry of default judgment.

### 7. The Public Policy Favoring Decisions on the Merits

Because public policy dictates that courts prefer to rule on the merits, this factor will always weigh against granting a motion for default judgment.  "The mere enactment of Rule 55(b), however, indicates that 'this preference, standing alone, is not dispositive.'"  *Prinko Image Co.*, 2018 WL 6264988, at *3 (quoting *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177).  Indeed, Defendant's choice not to defend themselves renders a decision on the merits "impractical, if not impossible."  *PepsiCo Inc.*, 238 F. Supp. 2d at 1177.  Since the other *Eitel* factors all weigh in favor of granting default judgment here, the Court will exercise its discretion to grant Plaintiff's motion for default judgment.

//

## D.     Relief Sought

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted.  Plaintiff carries the burden of proving his damages and requests for other relief.  *See Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).  Here, Plaintiff seeks a permanent injunction, attorneys' fees, and costs.[3]

### 1.  Injunctive Relief

Plaintiff first seeks an injunction directing Defendant to make his restaurant compliant with the ADA guidelines for sales counters, tables, and pathways.  Where, as here, an injunction is "sought to prevent the violation of a federal statute which specifically provides for injunctive relief," the standard requirements for equitable relief do not need to be satisfied.  *See Antoninetti v. Chipotle Mexican Grill, Inc.,* 643 F.3d 1165, 1175–76 (9th Cir. 2010) (internal quotation marks and citation omitted).

The ADA permits injunctive relief to "alter facilities to make [them] readily accessible."  42 U.S.C. §12188(a)(2).  Whether a facility is "readily accessible" is defined, in part, by the ADA Accessibility Guidelines ("ADAAG").  *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011).  As discussed above, Plaintiff has stated a viable ADA claim through his assertions that the restaurant's sales counters, tables, and pathways violate the ADAAG.  Injunctive relief compelling Defendant to remove the barriers to comply with the ADAAG is therefore appropriate. *See Vogel*, 992 F. Supp. 2d at 1015.

---

[3] Plaintiff's Application also seeks $4,000 in statutory damages for the Unruh Act claim.  Because the Court declined to exercise supplemental jurisdiction over that claim, it will not address the request for statutory damages.

## 2. Fees and Costs

Next, Plaintiff seeks $5,389 in attorneys' fees and $845 in litigation costs.  (Dkt. 19-4 [Declaration of Russell Handy, hereinafter "Handy Decl."].)  In ADA cases, the Court calculates attorneys' fees using the lodestar approach.  *See Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018).  "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.'"  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (citation and quotations omitted).  The party seeking attorneys' fees bears the burden of "submitting evidence of the hours worked," the rate charged, and that "the rate charged is in line with the prevailing marking rate of the relevant community."  *Carson v. Billings Police Dep't.*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation omitted).

Plaintiff's fee request is based upon the following rates: $595 per hour for partner Mark Potter, $595 per hour for partner Russell Handy, $450 for supervising attorney Amanda Seabock, and $400 for attorney Faythe Gutierrez.  (Handy Decl. ¶¶ 3–6.)  "In establishing the reasonable hourly rate, the Court may take into account: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained."  *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1170 (N.D. Cal. 2015).

The requested rates for Mr. Potter and Mr. Handy are consistent with hourly rates that have been approved for attorneys with similar experience and qualifications in ADA cases.  *See, e.g.*, *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1278 (N.D. Cal. 2014) (awarding $550 per hour to attorney with over 20 years of experience in a disability access case).  Indeed, courts in this district—including this one—have awarded Potter

and Handy the hourly rates they seek here.  *See, e.g.*, *Lindsay v. Grupo Glemka*, Case No. 18-CV-5136, Dkt. 40 (C.D. Cal. July 19, 2019); *Whitaker v. Stellar Group, LLC*, Case No. 19-cv-05414(CJC), Dkt. 36 (C.D. Cal. Dec. 18, 2019).  Accordingly, the Court finds that $595 is a reasonable hourly rate for Potter and Handy.

However, the Court finds that the requested rate for Ms. Seabock is inflated. Amanda Seabock graduated law school in 2011, joined Potter Handy in 2012, and began overseeing the firm's disability rights cases in 2018.  (Handy Decl. ¶ 5.)  But Plaintiff has not provided any case in which Ms. Seabock has been awarded the $450 she seeks here. In fact, many other courts have determined that a reasonable rate for her is between $300 and $350.  *See, e.g.*, *Gonzalez v. Machado*, 2019 WL 3017647, at *4 (N.D. Cal. July 10, 2019) (reducing rate charged by Ms. Seabock to $300); *Shaw v. Kelley*, 2019 WL 5102610, at *5 (N.D. Cal. Oct. 11, 2019) (awarding $350 per hour for Ms. Seabock); *Johnson v. AutoZone Inc.*, 2019 WL 2288111, at *7 (N.D. Cal. May 29, 2019) (awarding $300 per hour for Ms. Seabock).  Moreover, the issues here are not especially novel or complex.  The Court therefore finds that an hourly rate of $300 is appropriate for Ms. Seabock, consistent with other courts' decisions.

It follows that Ms. Gutierrez's requested $400 rate also is subject to reduction.  She graduated law school in 2015 and has considerably less experience than Ms. Seabock. (Handy Decl. ¶ 16.)  The Court finds that an hourly rate of $200 is appropriate for Ms. Gutierrez.  *See Johnson*, 2019 WL 2288111, at *7 (awarding $250 for the most junior attorney working on an ADA case).

Having determined the reasonableness of the rates, the Court will next address whether the time the attorneys spent on this case was reasonable.  Plaintiff's counsel has submitted an affidavit with an itemized billing statement that provides a detailed breakdown of the 11.3 hours that the four attorneys spent working on this case.  (Handy

Decl. at Ex. 1.)  Reasonable hours expended on a case are hours that are not "excessive, redundant, or otherwise unnecessary."  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted).  Having reviewed the billing records, the Court will make the following deductions:

- The 1.6 hours Mr. Handy spent reviewing the investigator's report and giving the investigator instructors will be reduced by 1 hour.  It should not take an attorney with Mr. Handy's experience so long to review a report primarily consisting of pictures of non-compliant structures at the restaurant.

- The .5 hours that Mr. Handy spent "drafting the complaint" will not be counted. The complaint in this case is nearly identical to the thousands of other complaints that Plaintiff's law firm has filed over the past year.  *See Johnson v. Baglietto*, 2020 WL 3065939, at *12 (N.D. Cal. May 21, 2020) (noting that Potter Handy has filed "approximately 5,000 ADA cases in the United States District Courts for the Eastern, Northern, and Central Districts of California").  Thus, "drafting the complaint" is not a substantive task that should have been completed by a senior partner.  The .4 hours Mr. Handy spent "reviewing" and "drafting" a response to the Court's order to show cause will be struck for similar reasons.  Again, the response filed came from a template and is virtually identical to the responses filed in hundreds of other cases.

- The .3 hours the Ms. Seabock spent "reviewing the notice of assignment" and the "notice of court-directed ADR" program will be deducted.  These are non-substantive documents that are filed in every case in this District.  Given that Ms. Seabock has considerable experience litigating ADA cases, there is no reason for her to spend time reviewing them.

- The 5.4 hours that Ms. Gutierrez spent completing Plaintiff's declaration and "amend[ing] the default judgment template" also must be reduced considerably. Again, the instant application came from a template that has doubtlessly been used

in many other cases.  It should not have taken an attorney with Ms. Gutierrez's experience so long to prepare it.  The Court deducts 4 hours from this entry.

After these reductions, Plaintiff is left with 5.1 hours at rates of $595 for Potter and Handy, $300 for Seabock, and $200 for Guiterrez for a total of $1,998.50.

Plaintiff also seeks to recover $845 in costs, including $400 for the filing of the Complaint, $400 for investigator fees, and $45 for service fees.  (Handy Decl. at 7.)  The Court finds these costs to be reasonable and awards Plaintiff $845 in costs.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED IN SUBSTANTIAL PART**.  Plaintiff is awarded (1) injunctive relief requiring Defendants to create ADA compliant sales counters, tables, and paths of travel, and (2) attorneys' fees and costs of $2,843.50.  A judgment consistent with this Order will be issued.

DATED:      July 2, 2020

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE